No. _____

IN THE

# United States Court of Appeals for the Eleventh Circuit

AMY NICOLE SEAL,

*Plaintiff-Respondent,*

*v.*

VGW LTD., VGW HOLDINGS US, INC., VGW US, INC.,
VGW LUCKYLAND, INC.

*Defendants-Petitioners.*

On Appeal from the United States District Court
for the Northern District of Alabama
No. 3:23-cv-01295-LCB, Hon. Liles C. Burke

## VGW'S PETITION FOR PERMISSION TO APPEAL

John Earnhardt
Carmen Chambers
John C. Neiman, Jr.
MAYNARD NEXSEN PC
1901 Sixth Ave. North, Suite 1700
Birmingham, AL  35203

Behnam Dayanim
Abigail Colella
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC  20037
(202) 339-8400

*Counsel for Petitioners*

*Amy Nicole Seal v. VGW Ltd. et al.*

No. ____

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1, Defendant-Petitioner, by and through its undersigned counsel, certifies that the following is a list of persons and entities that have an interest in the outcome of this case:

1.  Barnett, Wesley W., *counsel for Respondent*;

2.  Beaman, Gregory, *counsel for Petitioners*;

3.  Bedford, Rogers & Bowling, P.C., *counsel for Respondent*;

4.  Bowling, Jeffrey L., *counsel for Respondent*;

5.  Chambers, Carmen, *counsel for Petitioners;*

6.  Colella, Abigail, *counsel for Petitioners*;

7.  Davis & Norris, LLP, *counsel for Respondent*;

8.  Davis, D. Frank, *counsel for Respondent*;

9.  Dayanim, Behnam, *counsel for Petitioners*;

10. Earnhardt, John, *counsel for Petitioners*;

11. Maynard Nexsen PC, *counsel for Petitioners*;

12. Seal, Amy Nicole, *Respondent*

13. Neiman, Jr., John C., *counsel for Petitioners*;

*Amy Nicole Seal v. VGW Ltd. et al.*
No. ____

      14.    Norris, John E., *counsel for Respondent*;

      15.    Orrick, Herrington & Sutcliffe LLP, *counsel for Petitioners*;

      16.    VGW Holdings Ltd., *Petitioner*;[1]

      17.    VGW Holdings US Inc., *Petitioner*;

      18.    VGW US Inc., *Petitioner*;

      19.    VGW Luckyland Inc., *Petitioner*;

      20.    Ware, Dargan M., *counsel for Respondent*;

Dated: January 16, 2025

                                  ORRICK, HERRINGTON & SUTCLIFFE LLP

                                  */s/ Behnam Dayanim*
                                  Behnam Dayanim
                                  *Counsel for Petitioners*

---

[1] VGW Holdings Ltd was incorrectly named in the Complaint as VGW, Ltd.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES......................................................................iii

INTRODUCTION ............................................................................. 1

BACKGROUND.............................................................................. 3

    I.    The Alabama Statute ............................................... 3

    II.   The Instant Litigation ............................................ 4

    III.  The Procedural History ......................................... 5

QUESTIONS PRESENTED...................................................... 8

RELIEF SOUGHT ...................................................................... 9

REASONS FOR GRANTING THE PETITION ......................................... 9

    I.    This Court Has Jurisdiction To Hear This Appeal................ 9

    II.   The Court Should Grant The Petition To Correct The District Court's Restrictive Application Of CAFA And Clarify The Nature Of Plaintiff's Suit.................................... 10

        A.    Plaintiff's suit is subject to federal jurisdiction under CAFA because it must proceed under Rule 23 or a state analogue.................................... 11

            1.    CAFA applies to cases brought by a representative on behalf of a class of similarly situated persons, regardless of labels................ 12

            2.    Even if Section 8-1-150 provides an independent basis for state-wide claims, the conduct of the suit will be sufficiently similar to actions under Rule 23 to qualify as a class action under CAFA. ........................................... 17

B.    Alternately, Plaintiff's Section 8-1-150(b) suit is subject to traditional diversity jurisdiction. ................ 19

1.    Plaintiff's Section 8-1-150(b) suit is an individual action in which Plaintiff may receive a single, undifferentiated recovery in excess of $75,000, so the non-aggregation principle is inapposite. ...................................... 19

2.    Common sense indicates that Plaintiff will ultimately recover in excess of $75,000, including attorney fees. ...................................... 25

III.   This Petition Raises Important And Recurring Jurisdictional Issues Not Yet Addressed By This Court ...... 26

CONCLUSION ......................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*,
    731 F.3d 740 (7th Cir. 2013).......................................................... 12, 15

*Badeaux v. Goodell*,
    358 F. Supp. 3d 562 (E.D. La. 2019) .............................................. 15, 16

*BP P.L.C. v. Mayor of Baltimore*,
    141 S. Ct. 1532 (2021) ........................................................................... 9

*Brill v. Countrywide Home Loans, Inc.*,
    427 F.3d 446 (7th Cir. 2005).................................................................. 9

*Brown v. Board of Ed.*,
    863 So. 2d 73 (Ala. 2003) ................................................................... 24

*Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*,
    585 F.3d 33 (1st Cir. 2009) .............................................................. 9, 26

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014)........................................................................... 9, 10

*Davis v. Orme*,
    36 Ala. 540 (1860) ........................................................................... 3, 14

*Evans v. Walter Indus., Inc.*,
    449 F.3d 1159 (11th Cir. 2006)........................................................... 10

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014)............................................................................ 22

*Humphrey v. Viacom, Inc.*,
    No. 06-2768, 2007 WL 1797648 (D.N.J. June 20, 2007) ...................... 3

*McCray v. Moweaqua Coal Mining & Mfg. Co.*,
    149 Ill. App. 565 (Ill. App. Ct. 1909) ................................................. 22

*Navarro Sav. Ass'n v. Lee,*
   446 U.S. 458 (1980) ................................................................ 22

*Estate of Pew v. Cardarelli,*
   527 F.3d 25 (2d Cir. 2008) ................................................... 26

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ............................................................... 18

*Rice v. Aristocrat Leisure, Ltd.,*
   No. 3:23-cv-00480-LCB, 2023 WL 5198510
   (N.D. Ala. Aug. 11, 2023) ..................... 4, 6, 9, 12, 14, 16, 20, 21, 22, 23

*Roe v. Michelin N. Am., Inc.,*
   613 F.3d 1058 (11th Cir. 2010) ..................................... 23, 25

*Rotunda v. Marriott Int'l, Inc.,*
   123 A.3d 980 (D.C. 2015) ............................................. 17, 18

*S. Fla. Wellness, Inc. v. Allstate Ins. Co.,*
   745 F.3d 1312 (11th Cir. 2014) ................................... 25, 26

*Siegelman v. Chase Manhattan Bank,*
   575 So. 2d 1041 (Ala. 1991) ........................................ 14, 24

*Snyder v. Harris,*
   394 U.S. 332 (1969) ............................................................... 19

*Standard Fire Ins. Co. v. Knowles,*
   568 U.S. 588 (2013) ............................................................... 15

*Tarrant Am. Sav. Bank v. Smokeless Fuel Co.,*
   233 Ala. 507 (1937) ............................................................... 22

*United States v. Robinson,*
   367 F.3d 278 (5th Cir. 2004) .............................................. 18

*Whaley v. Wynn,*
   208 Ala. 342 (1922) ............................................................... 22

*Williams v. Emps. Mut. Cas. Co.,*
   845 F.3d 891 (8th Cir. 2017) ................................. 12, 15, 16

iv

*Wright v. City of Millbrook*,
    304 So. 3d 202 (Ala. 2020) ................................................... 23

*Wright v. Dep't of Ala. Veterans of Foreign Wars*,
    No. CV-07-S-2071-NE, 2010 WL 11569414 (N.D. Ala. Mar.
    24, 2010) ...................................................................... 14

**Statutes**

28 U.S.C. § 1332(a) ..............................................5, 6, 11, 19

28 U.S.C. § 1332(d) ......................................................... 1

28 U.S.C. § 1332(d)(1)(B)................................. 11, 12, 14, 17, 19

28 U.S.C. § 1332(d)(2) ..................................................... 11

28 U.S.C. § 1332(d)(6)..................................................... 11

28 U.S.C. § 1453(c)(1) .................................................. 9, 26

Ala. Code § 8-1-150......................... 3, 4, 9, 10, 12, 14, 17, 21, 26

Ala. Code § 8-1-150(a)................................................ 3, 13, 20

Ala. Code § 8-1-150(b).............................................. *passim*

Ala. Code § 8-1-150(c) .................................................... 18

Tenn. Code § 29-19-105 .................................................... 27

Wis. Stat. § 895.056....................................................... 27

**Rules and Regulations**

Ala. R. Civ. P. 17........................................................ 21

Fed. R. Civ. P. 23 ............. 1, 2, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 27

**Other Authorities**

FTC, *Consumers and Class Actions* (2019),
    https://perma.cc/3QYN-PTPN ............................................ 25

v

Neil Gorsuch, The Case for Textualism, *A Republic, If You Can Keep It* (Crown Forum 2019) ...................................................... 23

Newberg and Rubenstein on Class Actions § 1:13 (6th ed.) ............ 13, 24

S. Rep. No. 109-14 (2005) ................................................... 10, 19

## INTRODUCTION

Plaintiff attempts to misconstrue Alabama's 1852 anti-gambling statute in a manner unsupported by text or historical practice. The statute, enacted before mass or class claims were even ***permitted*** in American law, authorizes a third party to recover the loss of an ***individual identified gambler***, so that the money can be returned to ***that*** gambler's spouse or other family. Yet Plaintiff seeks to recover the supposed losses of most everyone in Alabama—thousands of unidentified people and millions in "losses"—in a single "representative" suit.

Simultaneously, Plaintiff seeks to avoid a federal forum. In permitting that result, the district court failed to conduct a proper inquiry in at least four respects. First, it failed to recognize that the statute does not offer a standalone mechanism to pursue class-wide relief. Plaintiff's suit for recovery of statewide losses can only be brought, if at all, under Federal Civil Rule 23 or its Alabama analogue—and is therefore subject to federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Second, it ignored that, if Plaintiff's strained construction of the statute prevails,

due process concerns will mandate a process similar to Rule 23, rendering Plaintiff's suit sufficiently "similar" to a class action for CAFA jurisdiction to attach. Third, the court uncritically accepted Plaintiff's anachronistic and atextual construction of the statute without recognizing its logical consequence—that the statute grants a single plaintiff a single, undifferentiated recovery that, here, would meet the $75,000 amount-in-controversy requirement for traditional diversity jurisdiction. Finally, it rejected as speculative the inevitable reality that Plaintiff herself will recover over $75,000 if successful.

This Petition raises novel and important questions regarding how to construe Alabama's 1852 statute (which is increasingly the subject of litigation here and, in similar state counterparts, around the country) and, more broadly, the degree to which a court applying CAFA should take a plaintiff's characterization of her action at face value—no matter how incredible—rather than considering the reality of the plaintiff's claims.

## BACKGROUND

### I.    *The Alabama Statute*

Alabama Code Section 8-1-150, enacted in 1852, offers two avenues to recover a gambler's loss.  Section 8-1-150(a) permits the gambler to recover his own loss.  Section 8-1-150(b) permits "any other person" to recover the gambler's loss "for the use of the wife, or, if no wife, the children, or if no children, the next of kin of the loser."

The statute, and others like it, "derive from the 1710 Statute of Queen Anne," and were "intended to prevent gamblers and their families from becoming destitute due to gambling losses—and thus becoming wards of the State—by providing a method for the gambler's spouse, parent or child to recover the lost money from the winner." *Humphrey v. Viacom, Inc.*, No. 06-2768, 2007 WL 1797648, at *3 (D.N.J. June 20, 2007); *see also Davis v. Orme*, 36 Ala. 540, 543 (1860) (discussing purpose of § 8-1-150(b)).  In this regard, provisions permitting third-party recovery like Section 8-1-150(b) have been construed "narrowly in light of their history and purpose," particularly where the plaintiff "seeks to recover unspecified losses to which [s]he has no personal connection."  *Humphrey*, 2007 WL 1797648, at *4.

3

In the nearly two centuries since the Alabama statute's enactment (and before Plaintiff's counsel's recent suits), it had ***never*** been used to enable a third party to recover the losses of an unidentified gambler with whom the third party has no relationship, nor "to recover multiple gambling losses for multiple families in the same action," ***much less the families of virtually everyone in the entire state***. *Rice v. Aristocrat Leisure, Ltd.*, No. 3:23-cv-00480-LCB, 2023 WL 5198510, at *3 & n.3 (N.D. Ala. Aug. 11, 2023).

## II.    *The Instant Litigation*

In March 2023, Respondent's counsel filed eight cases in Alabama state court against online game providers based on a novel reading of Section 8-1-150(b).  Each defendant provides free online games in which players have the option to make in-game purchases.  *See* Dkt. 16 ("Op.") at 2.

In each case, an individual plaintiff brought a single Section 8-1-150(b) claim seeking to recover ***all*** of the in-game purchases made by ***all*** of an online game's players from Alabama, ***except*** for any "Alabamian who lost more than $75,000."  Op. 3.  The suits posit that these purchases constitute gambling "losses" under Section 8-1-150.

4

(The games are ***not*** gambling, but that issue was not decided by the district court and is not relevant to its decision or this petition.)  The plaintiffs do not allege that they played the games or have a personal relationship with anyone who played the games.  *See* Op. 12; Dkt. 1-1 ("Compl.").

In addition to seeking recovery of all "losses," each plaintiff's suit seeks "interest," "costs," and "any other relief to which the Court finds plaintiff and the family members are entitled," as well as appointment of "a special master to determine all proper recipients of [any] money" recovered.  Compl., Prayer.  In short, the suits each involve a single plaintiff—who alleges to have never played the games—seeking to recover the "gambling" "losses" of thousands of Alabama players, purportedly so the "losses" can be distributed to the players' families.

### III. *The Procedural History*

Petitioner (like the defendants in each of the other cases) initially removed to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  Plaintiff moved to remand.  There was no dispute that the parties are completely diverse and that aggregate in-game purchases by Alabama players exceed $75,000.  Petitioner argued that

5

§ 1332(a)'s amount-in-controversy requirement is satisfied because Plaintiff seeks recovery of state-wide losses in a single claim, which Section 8-1-150(b) would provide in a single, undifferentiated award.

In August 2023, Judge Burke issued opinions remanding several of the cases to state court. *E.g. Rice*, 2023 WL 5198510, at *6. These opinions held that plaintiffs were effectively bringing representative claims on behalf of numerous individual families, such that the amounts recovered were earmarked "for the use of" those families and could not be aggregated for amount-in controversy purposes. *Id.*

The initial case against Petitioner was not before Judge Burke. However, in response to Judge Burke's decision and before the district court resolved the remand motion in Petitioner's case, Petitioner filed a supplemental declaration stating that one or more individual Alabama players spent $75,000 or more during the relevant period, thereby meeting the amount-in-controversy requirement without aggregation. *See* Dkt. 19-1, *Seal v. VGW LTD,* No. 3:23-cv-00462-CLS (N.D. Ala. Aug. 23, 2023). Plaintiff then voluntarily dismissed her complaint and refiled a new action—the instant litigation—in state court. The new action is materially identical to its predecessor, with one exception: in

the new complaint, Plaintiff disclaimed recovery for any "los[s]" sustained by an Alabamian who individually spent $75,000 or more in the games over the relevant period.  Compl. ¶ 24.

Petitioner again removed the case, asserting that—if Plaintiff's Section 8-1-150(b) suit is deemed a representative action on behalf of absent beneficiaries—the federal court would still have jurisdiction under the CAFA because the aggregate amount in controversy exceeds $5 million.  Petitioner also reasserted traditional diversity jurisdiction, arguing that Plaintiff's suit states a single claim and seeks a single, undifferentiated recovery, such that the non-aggregation doctrine does not apply, even if Plaintiff intends to distribute money to others.

This time, Petitioner's case was assigned to Judge Burke.  On January 7, 2025, the district court issued an order holding that Plaintiff's suit is not subject to federal jurisdiction under CAFA because the case was not filed under Rule 23 or a state analogue, and therefore does not qualify as a "class action."  Op. 8-13.  The court also reiterated its prior holding (in those other cases) that the suit is not subject to federal diversity jurisdiction because the losses of different players are non-aggregable for amount-in-controversy purposes.  Op. 14-15.

7

Finally, the court recognized "valid questions" as to whether plaintiff and her attorneys would recover unclaimed funds, but deemed that possibility too "hypothetical" to enter the jurisdictional calculus. Op. 15-16. Accordingly, the district court ordered remand. Op. 16.

## QUESTIONS PRESENTED

Because the parties are completely diverse and the total in-game spending by Petitioner's customers in Alabama during the applicable statutory period exceeded $5,000,000—and thus greatly exceeded $75,000—the questions presented are:

(1) Whether a Section 8-1-150(b) case qualifies as a "class action" under CAFA when an individual plaintiff seeks to recover gambling losses of thousands of Alabama players for the use of those players' families in a single suit.

(2) Whether, in the event the case is not a class action under CAFA, Section 8-1-150(b) provides a plaintiff with a single, undifferentiated recovery, such that the amount-in-controversy is measured by the total sum of alleged gambling losses sought by the plaintiff under the statute.

8

## RELIEF SOUGHT

This Court should grant permission to appeal and reverse the district court's remand order.

## REASONS FOR GRANTING THE PETITION

## I.    This Court Has Jurisdiction To Hear This Appeal

Remands of cases invoking CAFA are appealable.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 85-86 (2014); 28 U.S.C. § 1453(c)(1).  If the appellate court accepts the appeal, the entire order is subject to review, not just the decision with respect to CAFA.  *See e.g.*, *BP P.L.C. v. Mayor of Baltimore*, 141 S. Ct. 1532, 1536-38 (2021); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005).

Review is warranted here because this case raises important questions that were "incorrectly decided" by the district court, or that are "at least fairly debatable."  *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 38 (1st Cir. 2009).  This case raises novel questions regarding the jurisdictional implications of suits under Section 8-1-150, for which there is a "dearth of case law" and "no controlling precedent from the Eleventh Circuit."  *Rice*, 2023 WL 5198510, at *3.

9

## II.    The Court Should Grant The Petition To Correct The District Court's Restrictive Application Of CAFA And Clarify The Nature Of Plaintiff's Suit.

The district court's remand holds that Plaintiff's suit is jurisdictionally unique:  It is supposedly a representative action on behalf of thousands of absent parties (so the gamblers' losses are non-aggregable for diversity jurisdiction) yet can somehow proceed without Rule 23 or "similar" judicial rules (so the suit does not qualify as a "class action" subject to federal jurisdiction under CAFA).

This credulous take on Plaintiff's unprecedented invocation of a centuries-old statute finds no support in Section 8-1-150's text or history and defies the Supreme Court's and Congress's admonition to read "CAFA's 'provisions … broadly, with a strong preference that interstate class actions should be heard in a federal court.'" *Dart,* 574 U.S. at 89 (quoting S. Rep. No. 109-14, at 43 (2005)); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) ("all doubts" should be resolved in favor of CAFA jurisdiction).

Fairly read, Plaintiff's state-wide Section 8-1-150(b) claim qualifies as a "class action" subject to CAFA jurisdiction because it can only proceed—if at all—by way of a traditional Rule 23 class action, to

10

which CAFA jurisdiction clearly applies. *Infra* § II.A.1. At the very least, such a suit would qualify as a "class action" under CAFA's functional definition because due process and case management realities require rules of judicial procedure "similar" to Rule 23. 28 U.S.C. § 1332(d)(1)(B); *Infra* § II.A.2.

Alternatively, the federal court possesses diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff's construction of Section 8-1-150(b) contemplates awarding a plaintiff a single, undifferentiated recovery far in excess of $75,000 (with no aggregation needed). *Infra* § II.B.1. And common sense suggests that Plaintiff herself stands to recover at least $75,000 if she prevails. *Infra* § II.B.2.

Plaintiff should not be able to evade federal court oversight by simply declaring that her Section 8-1-150(b) suit exists in a twilight zone—neither individual suit nor class action.

## A.   Plaintiff's suit is subject to federal jurisdiction under CAFA because it must proceed under Rule 23 or a state analogue.

CAFA provides federal jurisdiction over interstate class actions with over $5 million in controversy. 28 U.S.C. § 1332(d)(2), (d)(6). The statute defines "class action" broadly and functionally as "any civil

11

action filed under rule 23 of the Federal Rules of Civil Procedure or similar [s]tate statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B).  The "threshold inquiry" is whether a suit is properly "characterize[d] … as a class action." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013).  Here, that begins with determining whether Plaintiff's Section 8-1-150 action was "necessarily 'filed under' Rule 23 or a state-law analogue, even though the complaint omits explicit reference to such a rule." *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 902 (8th Cir. 2017).

### 1.    CAFA applies to cases brought by a representative on behalf of a class of similarly situated persons, regardless of labels.

Contrary to Plaintiff's argument, Section 8-1-150 ***does not*** provide a cause of action for a single plaintiff to assert a single claim on behalf of a state-wide class of affected individuals who have no connection to the plaintiff.  Rather, as the district court has observed, the statute contemplates a "one-to-one" correspondence where a single plaintiff recovers a single gambler's loss. *Rice*, 2023 WL 5198510, at *3 n.3 ("[T]he wording of the statute does not seem to permit one person to

12

recover multiple gambling losses for multiple families in the same action[.]").  Accordingly, Plaintiff's suit may **only** proceed—if at all—by way of Rule 23.[2]  It therefore qualifies as a "class action" under CAFA, regardless of how Plaintiff framed her claim.

Section 8-1-150(b)'s text makes clear that the statute provides no independent basis for class-wide relief.  The statute exclusively uses singular language ("the amount"; "the payment"; "the loser").  Moreover, it operates by reference to Section 8-1-150(a), which allows a **single** gambler to recover **his or her own** loss.  By providing that, in the alternative, "any other person" may recover "such money," a Section 8-1-150(b) claim is likewise limited to recovery of the **single** gambler's loss discussed in Section 8-1-150(a).

The statute's one-to-one requirement also squares with the statute's history.  Representative suits seeking class-wide damages were not even **permitted** in the United States until 1938, nearly 100 years after Section 8-1-150(b)'s adoption in 1852.  *See* Newberg and Rubenstein on Class Actions § 1:13 (6th ed.).  And, as the district court

---

[2] Petitioner does not concede that Plaintiff's claim would be **certifiable** under Rule 23.  The point is simply that Rule 23 is the only available mechanism to pursue a claim for state-wide relief.

previously recognized, historic cases applying Section 8-1-150(b) implicitly accept that each suit may recover only a single gambler's loss. *See Rice*, 2023 WL 5198510, at *3 n.3 (citing *Orme,* 36 Ala. at 546 (permitting wife's Section 8-1-150(b) claim to recover her husband's portion of a bet, and indicating that losses by other gamblers could be recovered using a "separate action.")). It defies reason to read Section 8-1-150(b) as having created—sub silentio, and without contemporaneous recognition—the nation's first basis for collective litigation. *See, e.g., Siegelman v. Chase Manhattan Bank*, 575 So. 2d 1041, 1049 (Ala. 1991) (refusing to construe statute to permit imposition of tax when state lacked authority to impose such a tax at time of enactment).

Because Section 8-1-150(b) does not provide an independent basis for a single plaintiff to recover state-wide gambling losses, Plaintiff's claim to that effect could ***only*** proceed by way of Rule 23 or its Alabama analogue—the traditional class action mechanisms that unquestionably qualify for CAFA jurisdiction. 28 U.S.C. § 1332(d)(1)(B). Indeed, that is how others have attempted to recover multiple gamblers' losses under Section 8-1-150 in the past. *See, e.g., Wright v. Dep't of Ala. Veterans of*

*Foreign Wars*, No. CV-07-S-2071-NE, 2010 WL 11569414, at *8 (N.D. Ala. Mar. 24, 2010).

To be sure, Plaintiff does not cite Rule 23 in her pleadings. But CAFA jurisdiction turns on the substance of a lawsuit, not simply the way in which a claim is pled. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). Accordingly, other circuits have applied CAFA jurisdiction when a suit necessarily relies on Rule 23, even when the plaintiff disclaims such reliance. *Williams*, 845 F.3d at 900; *Addison*, 731 F.3d at 742. As the district court recognizes, the suits in *Addison* and *Williams* both arose from situations involving previously certified class actions. Op. 10-11. But this factual dissimilarity in no way undercuts the broader principle: A court assessing CAFA jurisdiction should not take a plaintiff's legal arguments as gospel, and should instead assess whether a claim does, in fact, necessarily rely on Rule 23.

The Eastern District of Louisiana recognized this in *Badeaux v. Goodell*—a case that did ***not*** involve prior class certification. 358 F. Supp. 3d 562, 569 (E.D. La. 2019). The court held that a case styled as a writ of mandamus and seeking damages on behalf of a class of season ticket holders was a class action for CAFA purposes, even though the

15

named plaintiffs denied reliance on class-action statutes. *Id.* "The only right the Plaintiffs possibly have for bringing claims on behalf of New Orleans Saints season ticketholders and members of the Who Dat Nation," the court explained, would be a right derived from Louisiana's analogue to Rule 23. *Id.*

So too here. Section 8-1-150(b) provides no independent basis for the class-wide relief Plaintiff seeks, so Plaintiff must proceed, if at all, under Rule 23 or a state analogue. Accordingly, the suit is a "class action" under CAFA. To hold otherwise would prioritize "magic words," allowing Plaintiff to "avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute" that actually authorizes the proposed suit. *Williams,* 845 F.3d at 901; *see also Rice*, 2023 WL 5198510, at *3 n.3. ("the manner in which [plaintiff] has brought this action *could* be viewed as a means to avoid filing a class action lawsuit.").

**2. Even if Section 8-1-150 provides an independent basis for state-wide claims, the conduct of the suit will be sufficiently similar to actions under Rule 23 to qualify as a class action under CAFA.**

The district court also concluded that Section 8-1-150(b) is not "similar" to Rule 23 because the statute does not explicitly require numerosity, commonality, typicality, and adequacy. Op. 11-12. That is not surprising, since nothing in Section 8-1-150(b) suggests it permits class claims. Why would a statute that creates a cause of action for a **single** plaintiff to recover a **single**, known gambler's loss—a statute enacted long before American law even **permitted** class actions—have reason to consider numerosity, commonality, typicality, or adequacy?

Nevertheless, to the extent the Court accepts (for remand purposes) Plaintiff's erroneous view of Section 8-1-150(b), the Court should also follow that premise to its logical conclusion: The class-like features of Plaintiff's claim introduce constitutional due process and case management concerns that will require the court to fashion "rule[s] of judicial procedure" at least "similar" to Rule 23—which is all CAFA requires. 28 U.S.C. § 1332(d)(1)(B).

The necessity of applying Rule-23-like procedures is illustrated by *Rotunda v. Marriott International, Inc.*, 123 A.3d 980, 982, 985-96 (D.C.

17

2015). There, the D.C. Court of Appeals concluded that a claim seeking class-wide damages under a statute permitting private-attorney-general actions, which did not specify procedures for managing class-wide litigation, was "in essence a class action, whether pled as such or not," and had to comply with Rule 23. *Id.* at 982. Similarly—and more fundamentally—the Supreme Court has made clear that, when a plaintiff seeks to adjudicate claims of others, due process requires notice to the class members, the opportunity to opt out, and adequate representation. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *see also* Compl., Prayer (recognizing need for special master to "determine all proper recipients of the money").

So too here. Plaintiff's claim could ***extinguish*** the claims of the "losers" or their family members without any notice or opportunity to participate in—let alone object to—how the case is litigated or resolved. *See* Ala. Code § 8-1-150(c). Allowing Plaintiff to pursue her suit ***without*** the notice, opt-out and other due process rights mandated by *Shutts* would raise serious constitutional concerns. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *United*

18

*States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004). There is no way to avoid the conclusion that the trial court (state or federal) will need to employ "rule[s]" "similar" to Rule 23—which is all CAFA requires. 28 U.S.C. § 1332(d)(1)(B); S. Rep. No. 109-14, at 34.

### B.    Alternately, Plaintiff's Section 8-1-150(b) suit is subject to traditional diversity jurisdiction.

If this Court concludes that Plaintiff's suit is not a "class action," the district court must instead have jurisdiction under 28 U.S.C. § 1332(a) because the total recovery sought exceeds $75,000, no aggregation needed. Separately, common sense demonstrates that Plaintiff stands to recover at least $75,000 if she prevails.

### 1.    Plaintiff's Section 8-1-150(b) suit is an individual action in which Plaintiff may receive a single, undifferentiated recovery in excess of $75,000, so the non-aggregation principle is inapposite.

The non-aggregation principle provides that "separate and distinct claims of ***two or more plaintiffs*** cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969) (emphasis added). Here, there is only ***one plaintiff***. *See id.* (permitting aggregation of multiple claims by a single plaintiff against a single defendant). Accordingly, Plaintiff's entire

19

recovery is properly counted as the amount in controversy, and the non-aggregation principle does not apply.

According to the district court, a Section 8-1-150(b) plaintiff is representationally pursuing claims possessed by gamblers' families (though not, apparently in the form of a class action), such that the losses incurred by different gamblers belong only to the families and are never recovered by the plaintiff.  Op. 14 (citing *Rice*, 2023 WL 5198510, at *4-5).  This reading of the statute is at odds with the statute's text, structure, and history.

Alabama's statute makes clear that it contemplates a single plaintiff recovering a single, undifferentiated loss.  It first provides in subsection (a) that a gambler who has lost any "money, thing, or its value" may "recover such money, thing, or its value" within six months of suffering the loss.  Ala. Code § 8-1-150(a).  It then states in subsection (b) that "[a]ny other person may also recover the amount of such money, thing, or its value" within twelve months "for the use of … the next of kin of the loser." *Id*. § 8-1-150(b).  Thus, subsection (a) provides for an individual gambler to recover ***his or her own loss*** in a single, undifferentiated recovery, and then subsection (b) provides for

any other person to recover ***that same, singular loss***.  There is no support for the notion that a plaintiff may recover multiple, divisible losses in a single suit.

The plain language likewise makes clear that the plaintiff who brings the suit "recover[s]" the loss, not anybody else, such that the named plaintiff is the real party in interest.  *Id.*; *see also* Ala. R. Civ. P. 17 ("every action shall be prosecuted in the name of the real party in interest").  Section 8-1-150(b) provides no mechanism by which recovered money is provided to the supposed beneficiaries.  Nor has the plaintiff, under the statute, purported to identify or notify the next of kin whose interest she is supposedly litigating.  Under plaintiff's reading, ***the plaintiff's recovery is seemingly the same even if the plaintiff identifies no family members at all***.  There is no reason to believe a Section 8-1-150 plaintiff is asserting a claim possessed by another when the statute, according to Plaintiff, includes no provision for identifying, notifying, or compensating that absent individual—and does not even require such an individual to exist.

The district court's contrary holding relies primarily on the phrase "for the use of." *See Rice*, 2023 WL 5198510, at *5-6.  But Alabama

precedent recognizes that similar language does ***not*** change the real

plaintiff.[3]  Moreover, the district court's concern about statutory

"surplusage," *id.,* ignores a commonsense reading that gives "for the use

of" effect without affecting the jurisdictional calculus: a Section 8-1-

150(b) plaintiff must, when relevant, use any recovery to support the

gambler's family, just as a trustee must use funds to support the trust's

beneficiaries, but remains the real party in interest for jurisdictional

purposes.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464-65 (1980);

*see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161,

162 (2014) ("A 'plaintiff' is commonly understood to be a party who

brings a civil suit in a court of law, not anyone, named or unnamed,

whom a suit may benefit").

Nor can the district court's conclusion rest on out-of-circuit cases

addressing aggregation in the context of private–attorney-general

actions.  *See Rice*, 2023 WL 5198510, at *4-5 (analogizing to such cases).

---

[3] *See Whaley v. Wynn*, 208 Ala. 342, 343-44 (1922) (complaint styled "Mrs. Wynn, for the use of Mrs. Mary C. Lowe" did not change that Wynn was the real party plaintiff, not Lowe); *Tarrant Am. Sav. Bank v. Smokeless Fuel Co.*, 233 Ala. 507, 510-12 (1937) (similar); *McCray v. Moweaqua Coal Mining & Mfg. Co.*, 149 Ill. App. 565, 568-69 (Ill. App. Ct. 1909) (similar).

Plaintiff's Section 8-1-150(b) suit is not brought under a private-attorney-general statute, is not structured like a private-attorney-general action, and does not involve the plaintiff acting to vindicate public rights. *See* Op. 13 (acknowledging this point in CAFA context). Thus, even assuming this Court (which has not addressed the issue) would approach private-attorney-general suits in a similar way as other circuits, that has no bearing on whether Section 8-1-150(b) contemplates a plaintiff receiving a single, undifferentiated award.

Most fundamentally, the district court erred by indulging Plaintiff's characterization of her claims, even if only for remand purposes. *See Rice*, 2023 WL 5198510 at *3 (noting its "serious doubt" but choosing to "analyze the action in the manner in which it has been pleaded"); *see also, e.g., Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1063-64 (11th Cir. 2010) (endorsing need to look beyond face of complaint where plaintiff engages in "artful pleading" to avoid federal jurisdiction). Instead, it should have discerned "what an ordinary English speaker familiar with the law's usages would have understood the statutory text to mean at the time of its enactment." *Wright v. City of Millbrook*, 304 So. 3d 202, 205 (Ala. 2020) (quoting Neil Gorsuch, The

23

Case for Textualism, *A Republic, If You Can Keep It* 128, 131 (Crown

Forum 2019)).  No ordinary English speaker in 1852 would have

understood Section 8-1-150(b) to allow recovery of multiple gamblers'

losses in a representative capacity because, as previously noted, the

concept of representative suits seeking class-wide damages would not

arise in American law until 1938—***86 years*** after the statute's

enactment, Newberg and Rubenstein on Class Actions § 1:13; *see also,*

*e.g., Brown v. Board of Ed.*, 863 So. 2d 73, 77 (Ala. 2003) (invalidating

county "occupational tax" based on state statute that prohibited county

"gross receipts taxes" because when the state statute was enacted

"gross receipts taxes were commonly understood to embrace an

occupational tax"); *Siegelman,* 575 So. 2d at 1049 (discussed *supra* at

14).

The district court erred in simply accepting Plaintiff's atextual

and ahistorical characterization of her Section 8-1-150(b) claim and

then applying the non-aggregation principle.  Diversity jurisdiction

exists because the statute itself contemplates awarding a single

recovery to a single plaintiff, such that the amount in controversy

requirement is met.

> **2.    Common sense indicates that Plaintiff will ultimately recover in excess of $75,000, including attorney fees.**

Even if this case is a representative action bringing claims possessed by absent families, and therefore implicates the non-aggregation doctrine, Plaintiff will inevitably assert an interest in unclaimed recovered funds—for instance, where no dependent exists or where no family member comes forward to collect a claim—and recover over $75,000.

The district court erred by brushing aside such recovery as "hypothetical." Op. 15. Removing defendants need only show it is "more likely than not" that the plaintiff's claims exceed $75,000, *Roe*, 613 F.3d at 1061, "[a]nd the undertaking is not to be defeated by unrealistic assumptions that run counter to common sense." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014). Here, over ***$5 million*** is at issue—more than ***60 times*** the amount in controversy threshold. A typical class action claim rate of 9% would leave $4,550,000 to which Plaintiff will assuredly lay claim. *See, e.g.*, FTC, *Consumers and Class Actions* 11 (2019), https://perma.cc/3QYN-PTPN. It does not require any stretch of the imagination to

acknowledge that unclaimed funds will exceed $75,000, a mere 1.5% of the total dollars at stake. Otherwise, the claim rate would have to reach a staggering, and implausible, 98.5%— ***ten times*** the norm. *Accord S. Fla. Wellness*, 745 F.3d at 1317 (employing similar percentage-based logic).

That is especially so because Section 8-1-150 provides no mechanism to administer claims, identify supposed beneficiaries, or require distribution of Plaintiff's recovery to the thousands of unknown players' families. As a practical matter, that excess will give Plaintiff a windfall payment, to which Plaintiff clearly has a pecuniary interest.

## III.  This Petition Raises Important And Recurring Jurisdictional Issues Not Yet Addressed By This Court.

Review under 28 U.S.C. § 1453(c)(1) of a district court's remand decision is particularly appropriate when the issues are "important" or "consequential," or when review "will alleviate uncertainty in the district courts." *Coll. of Dental Surgeons of P.R.*, 585 F.3d at 38; *Estate of Pew v. Cardarelli*, 527 F.3d 25, 29 (2d Cir. 2008). Here, these considerations further counsel in favor of review.

Plaintiff's counsel have already filed eight cases in Alabama, and more are likely forthcoming if Plaintiff's gambit is successful. The same

CAFA-interpretation issues will also arise elsewhere, as numerous states across the country have similarly worded statutes. *E.g.* Wis. Stat. § 895.056; Tenn. Code § 29-19-105. And, despite pending cases in several district courts nationwide, there is no on-point appellate authority anywhere in the country.

Moreover, in all these cases and future cases, the jurisdictional issues presented in this Petition will impact the merits of the case. For instance, the proceedings below will be radically different if this Court concludes that CAFA jurisdiction applies and Plaintiff's suit must necessarily proceed under Rule 23, *see supra* 11-16, or, alternately, if the Court concludes that suits seeking recovery of multiple losses under Section 8-1-150(b) are not representative actions at all, *see supra* 19-24.

Accordingly, this Petition not only presents a jurisdictional error that must be corrected, but also raises important and recurring questions that will have significant impacts beyond this case.

## CONCLUSION

This Court should grant Petitioner's permission to appeal and reverse the district court's order granting remand.

January 16, 2025                      Respectfully submitted,

                                      */s/ Behnam Dayanim*
John Earnhardt                        Behnam Dayanim
Carmen Chambers                       Abigail Colella
John C. Neiman, Jr.                   ORRICK, HERRINGTON &
MAYNARD NEXSEN PC                        SUTCLIFFE LLP
1901 Sixth Ave. North, Suite 1700     2100 Pennsylvania Avenue NW
Birmingham, AL  35203                 Washington, DC  20037
                                      (202) 339-8400

        *Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this petition contains 5170 words, excluding the parts of the motion exempted by Fed. R. App. P. 5(b)(1)(E).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Behnam Dayanim*
Behnam Dayanim
*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on January 16, 2025.

A copy of the foregoing was served upon the following counsel of record via FedEx and electronic mail:

John E. Norris
D. Frank Davis
Wesley W. Barnett
Dargan M. Ware
DAVIS & NORRIS, LLP
2154 Highland Avenue, South
Birmingham, AL 35205
jnorris@davisnorris.com
fdavis@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com

Jeffrey L. Bowling
BEDFORD, ROGERS & BOWLING, P.C.
303 North Jackson Street
P.O. Box 669
Russellville, AL 35653-0669
jeffbrbpc@bellsouth.net

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Behnam Dayanim*
Behnam Dayanim
*Counsel for Petitioners*

Addendum

Case 3:23-cv-01295-LCB    Document 16    Filed 01/07/25    Page 1 of 16

USCA11 Case: 25-90002    Document: 1-1    Date Filed: 01/16/2025    Page: 41 of 56

FILED
2025 Jan-07  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **AMY NICOLE SEAL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 3:23-cv-1295-LCB** |
| ) | |
| **VGW LTD,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Amy Nicole Seal sued VGW, Ltd., and three related business entities, VGW Holdings US, Inc., VGW US, Inc., and VGW Luckyland, Inc. ("VGW") in the Circuit Court of Franklin County, Alabama.  After VGW removed the case to this Court, Seal filed a motion to remand.  (Doc. 5).  Having considered all the filings as well as the argument of counsel at a hearing on the matter, the Court finds that the case is due to be remanded.

### I. Background

This case and four others currently pending before this Court raise the same allegations against various defendants.[1]  Each case is nearly identical to a set of nine

---

[1] The other four cases are *Mills v. Playtika, Ltd. et al.,* 3:23-cv-1289-LCB; *Rice v. Aristocrat Leisure, et al.*, 3:23-cv-1334-LCB; *Pilati v. Playstudios US LLC*, 3:23-cv-1335-LCB; and *Pilati v. Yellow Social Interactive Ltd*. 3:23-cv-1349-LCB.

cases filed in early 2023.  Five of those cases were assigned to the undersigned, s*ee*

*Gann v. Huuuge, Inc.,* No. 3:23-cv-00498-LCB, 2023 WL 5202376 (N.D. Ala. Aug.

14, 2023); *McGee v. SpinX Games, Ltd.,* No. 3:23-cv-00777-LCB, 2023 WL

5202377 (N.D. Ala. Aug. 14, 2023); *Mills v. Zynga, Inc*., No. 3:23-cv-00463-LCB,

2023 WL 5198511 (N.D. Ala. Aug. 11, 2023); *Pilati v. Yellow Soc. Interactive, Ltd*.,

686 F. Supp. 3d 1248, 1249–50 (N.D. Ala. 2023); *Rice v. Aristocrat Leisure, Ltd*.,

No. 3:23-cv-00480-LCB, 2023 WL 5198510 (N.D. Ala. Aug. 11, 2023), and four

were assigned to Judge Lynwood C. Smith.  *See Sornberger v. Sciplay Corp*., 3:23-

cv-00476-CLS (N.D. Ala.); *Seal v. VGW Ltd*., 3:23-cv-00462-CLS (N.D. Ala.);

*Pilati v. Playstudios US LLC*, 3:23-cv-00488-CLS (N.D. Ala.); and *Mills v. Playtika

Ltd*., 3:23-cv-00464-CLS (N.D. Ala.).  The Court will refer to these collectively as

the "Original Cases."

    As they did in the Original Cases, the individual plaintiffs have sued various

defendants, all providers of online casino-themed games[2], under Ala. Code § 8-1-

150(b) (1975).  That statute allows, among other things, "any person" to file a lawsuit

to recover money lost on illegal gambling wagers "for the use of" the losing player's

wife, children, or next of kin.  Four plaintiffs, Gayla Mills, Amy Nicole Seal, Angel

Deann Pilati, and Sera Stancil Rice have sued several defendants in two state courts

---

[2] While not relevant for purposes of the motions to remand, the parties dispute whether the
games offered by the defendants qualify as illegal gambling under Alabama law.

under this statute to recover money allegedly lost by all Alabama residents who have played the defendants' games for the use of those players' wives, children, or next of kin.  The defendants in each case removed the action to this Court asserting jurisdiction under various provisions of 28 U.S.C. § 1332.  The plaintiffs have all filed motions to remand.

After the Original Cases were removed to this Court, the undersigned remanded each of the cases assigned to him while the plaintiffs in the cases assigned to Judge Smith voluntarily dismissed their complaints a few days later.  The procedural events following the remands and voluntary dismissals noted above are a bit different for each case but fall into two categories relevant here.  The plaintiffs in the voluntarily dismissed cases assigned to Judge Smith, i.e., *Seal v. VGW Ltd*., 3:23-cv-00462-CLS (N.D. Ala.); *Pilati v. Playstudios US LLC*, 3:23-cv-00488-CLS (N.D. Ala.); *Mills v. Playtika Ltd*., 3:23-cv-00464-CLS (N.D. Ala.), refiled new cases in state court in August of 2023.  The plaintiffs in the remanded cases filed amended complaints.

Seal was one of the plaintiffs who voluntarily dismissed her original case and refiled a new case in state court.  The only relevant difference is that in her new complaint, Seal specifically excluded from recovery any Alabamian who lost more than $75,000  Accordingly, the factual allegations and legal theories are essentially

the same. As discussed in one of the Original Cases[3], *Pilati v. Yellow Soc.*

*Interactive, Ltd*:

> Gambling has long been illegal in the state of Alabama. "A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." Ala. Code § 13A-12-20(4) (1975). In 1852, the Alabama legislature codified a civil cause of action to recover money paid and lost in gambling endeavors. *Id*. § 8-1-150. The statute reads, in relevant part, as follows:
>
>> (a) All contracts founded in whole or in part on a gambling consideration are void. A person who has paid money or delivered anything of value lost upon any game or wager may recover such money thing, or its value by an action commenced within six months from the time of such payment or delivery.
>>
>> (b) Any person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.
>
> *Id*. § 8-1-150(a)–(b).
>
> Yellow Social, a Gibraltar corporation with its principal place of business in Gibraltar, is in the computer game industry. Specifically, the company develops and markets games that can be played online or via cellphone applications. Several of Yellow Social's products are games of chance, such as those involving virtual slot machines and/or casino themes. In those games, a player initially receives free virtual coins to spend in order to play the game. For example, for Yellow Social's slot-machine games, a player uses coins to "spin" the reel. If the player loses the spin, the coins he wagered are lost. If the player

---

[3] The Memorandum Opinions issued in each of the Original Cases were substantially similar.

wins, he receives more coins. If the player runs out of coins entirely, then he can either stop playing the game or purchase additional coins. In other words, he can buy more playing time.

Many Alabama citizens play Yellow Social's games of chance and have purchased additional playing time. On March 8, 2023, Angel Pilati, an Alabama citizen, filed this action against Yellow Social in the Circuit Court of Franklin County, Alabama, pursuant to Alabama Code § 8-1-150(b), seeking to recover the money lost by Alabama citizens on Yellow Social's games of chance between March 2022 and March 2023. Shortly thereafter, Yellow Social removed the action to this Court, pursuant to 28 U.S.C. §§ 1441, 1446. Yellow Social relied on 28 U.S.C. § 1332 as the grounds for removal, claiming that this Court has subject matter jurisdiction under the statute's diversity of citizenship provision.

*Pilati v. Yellow Soc. Interactive, Ltd*., 686 F. Supp. 3d 1248, 1250 (N.D. Ala. 2023)

(internal citations omitted).

In the present case, VGW has again argued that this Court has traditional diversity jurisdiction under 28 U.S.C. § 1332.  However, it has also argued that this Court has jurisdiction over the case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. §§ 1332(d)(2) and 1453(b).  In support of that argument, VGW attached to its notice of removal a declaration from its General Counsel, Michael Thunder.  (Doc. 1-2.) Thunder declared that, after reviewing VGW's financial reporting system for the relevant period, the total amount that Alabama citizens had spent on VGW's games of chance far exceeded $5,000,000, even when excluding players who spent more than $75,000.

The Court notes that in responding to the motions to remand in each of the cases now pending, the defendants filed a consolidated response stating:

> Because of the strong similarities between this action and four other actions pending before the Court, the overlap between Plaintiffs' arguments in each case, and the shared bases on which this Court has jurisdiction over these matters, Defendants in all five actions are all filing the same opposition brief to promote efficient resolution of these issues.

(Doc. 10). The Court agrees that the cases all share nearly identical legal issues.[4]

## II. Legal Standard

Federal courts are courts of limited jurisdiction. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). A removing defendant has the burden of establishing the propriety of removal under § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967,

---

[4] A relevant difference is between the cases that were dismissed and refiled and the remanded cases in which the plaintiffs filed amended complaints. In the latter class of cases, the plaintiffs argue that remand is appropriate for an additional reason, i.e., that 28 U.S.C. § 1447(d) prohibits reconsideration of a prior remand order. That argument is not relevant in the present case because Seal dismissed her original case and refiled anew in state court.

972 (11th Cir. 2002). Because of federalism concerns implicated by removal jurisdiction, removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand. *Am. Tobacco Co.*, 168 F.3d at 411; *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (noting Eleventh Circuit preference for remand where federal jurisdiction not "absolutely clear").

If the alleged basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, the removing defendant must prove: (1) that there is complete diversity of citizenship between the plaintiffs and the defendants; and (2) that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). If the amount in controversy is not apparent from the face of the complaint, the defendant must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds ... the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted).

Additionally, the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. §§ 1332(d)(2) and 1453(b), allows defendants to remove a class action with minimal diversity when at least 100 class members are present and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs...."[5] CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules

---

[5] 28 U.S.C. §§ 1332(d)(1)-(5) provides several grounds for which a district court must decline jurisdiction of a class action brought under this section.  None of those exceptions come into play for purposes of this order.

of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

### III.  Defendants' Grounds for Removal

#### a.  CAFA

The defendants first argue that Seal's case is properly removable under CAFA because they say, it meets all the requirements of a class action lawsuit as defined in the statute.  As noted, 28 U.S.C. §§ 1332(d)(2) and 1453(b), allow a defendant to remove a class action with minimal diversity when at least 100 class members are present and the amount in controversy exceeds $5,000,000.  Further, CAFA defines a class action to be a civil action filed under a state court's analogue of Fed. R. Civ. P. 23 or a state court's "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Seal did not file her lawsuit in state court under Alabama's version of Fed. R. Civ. P. 23.  In fact, she specifically stated in the second sentence of her complaint that it "is not a class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure." (Doc. 1-1 at 6).  Additionally, Seal is the only named plaintiff and does not purport to be a member of any affected class.  Rather, she filed her complaint under § 8-1-150(b) of the Alabama Code, which allows "any other person" to recover money lost through illegal gambling "for the use of the wife … children or

8

… next of kin of the loser."  Seal does not claim that she lost money by illegally gambling.  Rather, she claims to be the "other person" mentioned in the statute.

While noting Seal's assertions, the defendants nevertheless seek removal under CAFA because, they say, the action is "in substance a class action."  (Doc. 1 at 10).  Citing to the legislative history of CAFA, the defendants claim that Congress intended "the definition of 'class action' [] to be interpreted liberally," and that "[i]ts application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority."  S. Rep. No. 109-14, at 34–35 (2005).  Congress has emphasized that "[g]enerally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions."  *Id.*  The defendants claim that Seal's action resembles a class action because it is brought on behalf of the families of all players in Alabama who lost money on VGW's games.

In support of their argument that this case is removable because it is "in substance" a class action, the defendants note that there is no controlling law from the Eleventh Circuit or the Supreme Court as to how a district court should construe the phrase "class action" under CAFA.  However, they cite to cases from the Seventh and Eighth Circuits for the proposition that CAFA confers subject-matter jurisdiction over any lawsuit that is "in substance a class action."  Specifically, they cite *Addison Automatics, Inc. v. Hartford Cas. Ins*., 731 F.3d 740, 742 (7th Cir.

2013) and *Williams v. Emp'rs Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). However, those cases had vastly distinguishable procedural backgrounds and, to the extent they could be found persuasive, are readily distinguishable.

In *Addison*, the plaintiff "filed a complaint in state court seeking a declaratory judgment that defendant Hartford Casualty Insurance Company owed a duty to defend and indemnify a third party against whom Addison had earlier brought and settled a class action on terms that included an assignment to the class of the third party's rights against its insurers." 731 F.3d at 741. Like Seal did in this case, the plaintiff in *Addison* stated in its complaint that it intended to proceed in its individual capacity and not as a representative of the class it represented in the settled case. In finding removal proper, the Seventh Circuit held that the case was "in substance" a class action because "the terms of the class settlement approved in state court make clear that Addison has standing to pursue relief from Hartford only in its capacity as class representative." *Id.* at 742. The Court also held that the plaintiff owed a continuing fiduciary obligation to the class. That court summed up its analysis by noting that, "[b]y pursuing the rights assigned to it as class representative in the state court class action, Addison is necessarily continuing that class action."

The Eighth Circuit case, *Williams*, similarly had an underlying or related class action suit. In the case on appeal in *Williams*, the plaintiff filed a garnishment action in state court related to unpaid damages from an underlying class action. The

defendants removed based on CAFA.  In arguing for remand, the plaintiff, as Seal did here, noted that the present complaint was not brought under the relevant state statute authorizing class actions but under another provision of state law providing for equitable garnishments.  In rejecting the plaintiff's argument, the court held that "the equitable garnishment statute includes no provision authorizing a plaintiff to bring suit on behalf of others.  Rather, it is clear from the pleadings that Williams can bring this case only because of her status as the representative of the class certified under Rule 52.08, an undisputed analogue of Rule 23."  *Id.* at 900.  In the present case, there is no underlying class action comparable to the cases in *Addison* and *Williams*, and, for reasons explained below, it cannot be said that § 8-1-150(b) is similar to or an analogue of Fed. R. Civ. P. 23.

Rule 23(a) contains four prerequisites that must be satisfied before a member of a class may sue as a representative party.  Those prerequisites are commonly called numerosity, commonality, typicality, and adequacy of representation.  Each must be met before a district court can certify a class.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1250 (11th Cir. 2009) ("For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a).").  Section 8-1-150(b) contains none of those requirements.  Most relevant here is the typicality requirement.

The Eleventh Circuit has held:

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir.2008) (quotations and internal citations omitted; alteration in original). Although typicality and commonality may be related, we have distinguished the two concepts by noting that, "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir.2001) (citing *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000)).

*Vega*, 564 F.3d at 1275. Here, Seal does not allege that she lost money playing the defendants' games. In fact, Seal alleges nothing about herself other than to assert that she is an adult resident of Franklin County, Alabama. She claims only to be the "other person" referenced in § 8-1-150(b). Because § 8-1-150(b) does not require typicality, a mandatory prerequisite under Rule 23, it is not analogous to Rule 23. Similarly, because there is only one named plaintiff in this case and that plaintiff is not a representative member of the alleged class, the requirements of numerosity and commonality are not fulfilled.

As noted above, CAFA defines a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. 1332(d)(1)(B). Seal's case was not brought

under Rule 23, and, for the reasons stated above, it was not brought under a similar state statute. Accordingly, her case does not meet the definition of a class action under CAFA.

In Seal's memorandum in support of her motion to remand, she cites several cases where courts have declined to find CAFA jurisdiction in cases brought under state statutes "authorizing the government or a private entity to bring a statutory claim on behalf of those harmed by the defendant's conduct." (Doc. 8 at 3). In their response to that motion, the defendants devote several pages of argument to distinguishing those cases from the present one. Their argument is that the cases Seal cites involved private attorney general actions or *parens patriae* actions where the present case does not. This difference, the defendants say, makes the plaintiff's case more akin to a class action. But, as the Court held above, the present case does not meet the definition of a class action as described in § 1332(d). Whether the case is a private attorney general action or *parens patriae* action is immaterial.

### b. Diversity Jurisdiction

The defendants also argue that removal is proper because the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). They point out that they are citizens of a different state than Seal and contend that the amount in controversy exceeds $75,000. While Seal does not dispute the parties' geographical diversity, she does dispute the amount in controversy. The central argument between the

parties as to the amount in controversy is whether the amounts lost by each player in Alabama can be aggregated to reach the $75,000 threshold.[6]  In arguing that the amount in controversy is satisfied, the defendants candidly note that the undersigned rejected this argument in a related case last year, *Rice v. Aristocrat Leisure, Ltd.*, 2023 WL 5198510 (N.D. Ala. 2023).  While the defendants note their respectful disagreement with that ruling, they do not explicitly argue that the Court should reconsider it here.  Nevertheless, the Court sees no reason to depart from its analysis of this issue in *Rice* and similarly finds that the amount in controversy is not met in this case.

The defendants do purport to advance a new argument and urge the Court to rely on its "judicial experience and common sense" when evaluating the amount in controversy. *See Merriweather v. Digsby*, 2021 WL 2935936, at *2 (N.D. Ala. July 13, 2021) ("A court 'need not suspend reality or shelve common sense' when evaluating the amount in controversy." (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010))); *Roe*, 613 F.3d at 1062 ("[C]ourts may use their judicial experience and common sense in determining whether the case . . . meets federal jurisdictional requirements.").  They point out that by excluding from her complaint any player who lost more than $75,000, Seal is excluding from potential relief that portion of the public who was the most injured.  According to the

---

[6] In her complaint, Seal specifically excludes any player who lost more than $75,000.

defendants, this is contrary to Seal's assertion that she seeks to enforce a public interest. They also opine about how Seal's attorneys are to be compensated and argue that, since Seal is the only client, then any attorneys' fees can come only from her. Therefore, the reasoning goes, any amount that is paid to counsel is necessarily part of Seal's award and counts toward the amount in controversy. Since Seal is seeking recovery of money lost by all players in Alabama, an amount that is indisputably greater than $75,000, the amount in controversy would be satisfied.

Additionally, the defendants go through various hypothetical scenarios for how this case may eventually play out. For example, the defense asserts that there is a possibility that there will be unclaimed funds because, in many instances, it may be impossible to identify the losing player's wife, children, or next of kin. As a result, they argue, "a significant portion of the damages at issue in this case *may* not be returnable to statutorily eligible family members." (Doc. 10 at 23) (emphasis added). The defense also opines that "*if* the case proceeds to the point where a claims or redemption process is required, a *potentially* large portion of the population will likely not submit a claim to monies to which they might be entitled." *Id.* (emphasis added). The defendants' answer to these hypothetical questions is that Seal and her attorneys would keep this unclaimed money and that the amount of unclaimed money would likely be more than $75,000. They also point out that § 8-1-150(b) is silent on these issues.

While these hypotheticals certainly raise valid questions about how cases brought under § 8-1-150(b) unfold, they do not overcome the well-settled principle that "removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).; *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (noting Eleventh Circuit preference for remand where federal jurisdiction not "absolutely clear"). As evidenced by the defendants' use of the speculative language emphasized above, jurisdiction here is not "absolutely clear." Given the dearth of caselaw interpreting cases brought under § 8-1-150(b), this Court can only speculate about how an Alabama court would resolve the hypotheticals discussed above. Accordingly, the case is due to be remanded.

## IV.    Conclusion

For the foregoing reasons, the Court finds that it does not have subject-matter jurisdiction over this case under CAFA or § 1332(a). Accordingly, Seal's motion to remand (Doc. 5) is **GRANTED**, and this case is hereby remanded to the Circuit Court of Franklin County, Alabama.

**DONE** and **ORDERED** January 7, 2025.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE